UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT SCOTT SISLER,

              Petitioner,

                                      CASE NO. 2:07-CV-10944

   v.                                CHIEF JUDGE GERALD E. ROSEN
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

GREG McQUIGGIN,

              Respondent.[1]

_____/


## <u>REPORT AND RECOMMENDATION</u>

*Table of Contents*

I.     <u>RECOMMENDATION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    <u>REPORT</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     E.    *Ineffective Assistance Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               a. Failure to Investigate Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               b. Misadvice Regarding Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
               c. Allowing Petitioner to Plead Pursuant to an Illusory Bargain . . . . . . . . . . . . . . . . 16
          3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     F.    *Plea and Sentencing Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          1.    *Breach of Plea Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2.    *Involuntary Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          3.    *Misscoring of Sentencing Variables* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     G.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

---

    [1]By Order entered this date, Greg McQuiggin has been substituted in place of Raymond Booker as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Robert Scott Sisler is a state prisoner, currently confined at the Straits Correctional Facility in Kincheloe, Michigan.

        2.      On December 4, 2001, petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529; conspiracy to commit armed robbery, MICH. COMP. LAWS §§ 750.157, 750.529; assault with intent to rob while armed, MICH. COMP. LAWS § 750.89; and first degree home invasion, MICH. COMP. LAWS § 750.110a, pursuant to his plea of no contest in the Calhoun County Circuit Court.  On December 19, 2001, he was sentenced to concurrent terms of 300-500 months' imprisonment on the robbery, assault, and conspiracy convictions, and to a concurrent term of 150-360 months' imprisonment on the home invasion conviction.

        3.      Petitioner sought leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

> I.      DEFENDANT IS ENTITLED TO RESENTENCING BECAUSE THE STATUTORY SENTENCING GUIDELINES WERE MISSCORED AS TO OFFENSE VARIABLES 7 AND 13, WHICH AFFECTED THE STATUTORY SENTENCING GUIDELINE RANGE.
>
> II.     DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL MISSCORED THE SENTENCING GUIDELINES WHICH CAUSED DEFENDANT TO PLEAD NO CONTEST UNDER THE ASSUMPTION THAT HIS MINIMUM SENTENCE WOULD BE 17 YEARS.

The court of appeals denied petitioner's application for leave to appeal in a standard order.  *See People v. Sisler*, No. 245630 (Mich. Ct. App. Sept. 3, 2003) (per curiam).

4.      Petitioner, through counsel, sought leave to appeal these two issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Sisler*, 470 Mich. 871, 682 N.W.2d 85 (2004).

5.      Petitioner thereafter filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.      APPELLANT WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY: (1) MISLED HIS CLIENT TO PLEAD TO A SPECIFIC TERM OF YEARS; (2) FAILED TO EXPLAIN A POTENTIAL DEFENSE TO THE CRIME CHARGED, AND (3) ALLOWED HIS CLIENT TO ENTER AN ILLUSORY NOLO CONTENDERE PLEA UNDER A MISTAKENLY BELIEF [sic] OF WHAT THE SENTENCING GUIDELINES RANGES CALCULATED TO BE FOR THE OFFENSE CHARGED.

II.     APPELLANT SHOULD BE RESENTENCED WHERE HIS SENTENCE WAS IMPOSED CONTRARY TO HIS PLEA BARGAIN, AND THE SENTENCING SCORING VARIABLES WERE MISCALCULATED TO ENHANCE THE PUNISHMENT BY USAGE OF THE HABITUAL OFFENDER'S STATUTE.

III.    APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO HAVE EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL WHERE HIS APPELLATE ATTORNEY LABORED UNDER A MISCONCEPTION OF THE LAW THAT HE WAS LIMITED TO A SENTENCING ISSUE, AND FAILED TO CHALLENGE THE CONSTITUTIONALITY OF THE WAIVER OF A RIGHT TO APPEAL BECAUSE OF A PLEA BASED CONVICTION REQUIRING REVERSAL.

On November 12, 2004, the trial court denied petitioner's motion for relief from judgment.  The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Sisler*, 477 Mich. 911, 722 N.W.2d 840 (2006); *People v. Sisler*, No. 265705 (Mich. Ct. App. May 4, 2006).

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

3

on March 5, 2007. As grounds for the writ of habeas corpus, he raises the three claims that he raised in his state court motion for relief from judgment.

7.      Respondent filed his answer on September 7, 2007. He contends that petitioner's claims are without merit or procedurally defaulted.

8.      Petitioner filed a reply to respondent's answer on September 28, 2007.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions stem from the May 13, 2001, robbery of LaTina Warren and Gary Carlton in their home. In Count I of the information, petitioner was charged with armed robbery of Warren. In Count II, he was charged with assaulting Carlton with intent to rob while armed. In Count III, petitioner was charged with first degree home invasion. And in Count IV, he was charged with conspiring with codefendant Dameon Brewer to commit the armed robbery of Warren. On December 4, 2001, petitioner pleaded no contest pursuant to a plea agreement. At the plea hearing, petitioner's counsel indicated that petitioner was pleading no contest to all four counts as a second habitual offender, pursuant to a *Cobbs* agreement.[2]  *See* Video Plea Tr., at 3. The trial court indicated that it was not known what petitioner's guideline sentence would be, but pursuant to the *Cobbs* agreement the court would sentence petitioner to no more than the midpoint of the guidelines range. *See id*. The prosecutor, defense counsel, and petitioner all indicated that this was their understanding of the agreement. *See id*. at 4. The trial court explained to petitioner each of the four counts against him and the maximum penalty that each count carried. Petitioner indicated that he understood each of the charges and that he wished to plead no contest to each charge. *See id*. at 4-7.

---

[2]*People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), permits a defendant to plead guilty pursuant to the trial court's initial evaluation as to the appropriate sentence, subject to the defendant's right to withdraw his plea if the actual sentence imposed is more severe.

The court also explained to petitioner each of the rights he was giving up by pleading guilty, and petitioner indicated that he understood each of his rights. *See id*. at 7-8. The court then elicited from petitioner his understanding of the agreement and the promises that had been made and the voluntariness of his plea:

> THE COURT: You've heard the agreement here. Is that your understanding of the agreement as stated by your attorney, Mr. Gilbert?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Has anyone promised you anything more or anything differently in order to enter this plea? Did anyone promise you anything else?
>
> THE DEFENDANT: No.
>
> THE COURT: Anyone forcing you or threatening you to enter these pleas hear today?
>
> THE DEFENDANT: No.
>
> THE COURT: Is it your choice, then, to enter these pleas pursuant to the agreement on the record here in order to resolve these matters?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And if I accept your pleas today, you'll give up any claim that they were the result of any force or coercion not disclosed on the record, and you'll give up any claim it was not your own choice to enter these pleas. Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

*Id*. at 8-9. Petitioner's counsel set forth a factual basis for the plea based on the police report and preliminary examination transcripts. *See id*. at 9-12. The court asked the prosecutor and defense counsel whether they were aware of any promises, threats, or inducements not disclosed on the record, and they indicated that they were not. *See id*. at 12. The court, satisfied that petitioner was entering the pleas freely, voluntarily, and knowingly, accepted petitioner's pleas. *See id*.

Petitioner appeared for sentencing on December 19, 2001. In addition to objecting to the scoring of two offense variables under the sentencing guidelines, defense counsel informed the court that the guideline sentence calculated by the probation department was higher than the parties had

expected when petitioner entered his plea:

> Basically, your Honor, prior to entering the plea in this case, the Prosecution and I discussed the plea in this case, the Prosecution and I discussed with the Court what we believed the sentencing guidelines to be. The plea bargain in this case was to the middle of the guideline sentence. My client was expecting to receive up to 17 years as the minimum. Now according to the way the Probation Department has scored the guidelines, despite the way we scored them, he's looking at a maximum minimum, middle of the guideline range of around 29 years. That is a substantial change, your Honor.

Video Sentencing Tr., at 4. After rejecting counsel's challenges to the scoring of the guidelines, the court asked petitioner if he wished to say anything before sentence was imposed. Petitioner indicated that he was confused as to the discrepancy between the guidelines as calculated by the prosecutor and his attorney, and as calculated by the probation department. *See id*. at 10-11. Petitioner's counsel then indicated that petitioner wished to withdraw his plea:

> Your Honor, we are asking for the Court to set aside the plea in this case, this being unknowing and involuntary based upon the facts. When we originally worked this plea bargain out, I will state for the record, neither one of us was stating as to what the guidelines were; however, both the Prosecutor and I scored them as to what we believed them to be. I believed that he was an E4 and the Prosecutor believed that he was a D4, as far as for guideline purposes; however, be that as it may, my client was under the opinion that his middle-range guideline was going to be 17 years.[3]  Now the middle range has changed to 29 years and that's a significant change. I could understand if it was just a year or two, but we have gone up from basically two or three levels here to what we're currently at. And Mr. Sisler does not understand well, how can the Prosecutor and Defense Attorney agree as to what the guidelines were, then have the Probation Department come in and give a third opinion. In this case, your Honor, you know the Prosecutor is under no obligation to stand behind their guidelines; however, day of sentencing, basically it sounds like the Prosecution is siding with the Probation Department, and I believe at this point,

---

[3]For petitioner's robbery and assault convictions, a prior record variable category D and offense level IV (*i.e.*, a D4) provides a guideline range of 108-180 months for the minimum sentence, while a prior record category E and offense level IV provides a range of 135-225 months.  *See* MICH. COMP. LAWS. § 777.62. Because petitioner was sentenced as a second habitual offender, these guideline ranges would be increased by 25%, *see* MICH. COMP. LAWS. § 777.21(3)(a), yielding a D4 range of 135-225 months and an E4 range of 169-281 months.  The midpoint of these ranges, respectively, are 180 months (15 years) and 225 months (18.75 years).

6

your Honor, my client, if he wishes, should be allowed to withdraw his plea.

*Id*. at 12.  The prosecutor responded that petitioner understood at the time of the plea that there were

no promises as to what the guidelines score would be, only that he would be sentenced to the middle

of the guideline range which was calculated.  *See id*. at 12-13.  The court denied petitioner's request

to withdraw his plea and imposed sentence on petitioner.  *See id*. at 13-14.

C.    *Procedural Default*

Respondent first contends that portions of petitioner's first claim is barred by petitioner's

procedural default in the state courts, because petitioner failed to raise these claims on direct appeal.

The Court should decline to reject petitioner's claims on this basis.

Under the procedural default doctrine, a federal habeas court will not review a question of

federal law if the state court's decision rests on a substantive or procedural state law ground that is

independent of the federal question and is adequate to support the judgment.  *See Coleman v.*

*Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration

of a federal claim on either direct or habeas review unless the last state court rendering a judgment

in the case 'clearly and expressly' states that its judgment rests on the procedural bar."  *Harris*, 489

U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be

interposed by a State to prevent subsequent review . . . of a federal constitutional claim."  *Ford v.*

*Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984));

*see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir.

1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must

be clear, consistently applied, and well-established at the time of the petitioner's purported

default.").

7

Even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits.  As noted above, petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts.  Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal.  If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by

the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Ineffective Assistance Claims*

Petitioner's application asserts several claims that his trial and appellate attorneys rendered constitutionally ineffective assistance.  Specifically, petitioner contends that trial counsel was ineffective for: (1) failing to investigate a defense; (2) misadvising him regarding his sentence; and (3) allowing him to plead guilty pursuant to an illusory plea bargain.  Further, petitioner contends

10

that his appellate attorney was ineffective for failing to raise his habeas claims on direct appeal, and for failing to challenge the waiver of petitioner's appeal of right.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id.* at 687.  These two components are mixed  questions of law and fact.  *See id.* at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id.*  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality

11

of the evidence before the factfinder, "whether there is a reasonable probability that, absent the

errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.  Where, as

here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy

the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that,

but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to

trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828.  However, with

respect to the prejudice prong it is not enough for petitioner to merely allege that he would have

insisted on going to trial had counsel properly advised him.  As other judges of this Court have

explained:

> In the guilty plea context the petitioner must show that there is a reasonable
> probability that, but for counsel's errors, he would not have pleaded guilty and would
> have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366,
> 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a
> prediction of what the outcome of a trial might have been. *Id*. at 58-60, 106 S.Ct.
> 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the
> petitioner must show that, but for counsel's errors, he would not have pleaded guilty,
> because there would have been at least a reasonable chance he would have been
> acquitted. If examination of the totality of the circumstances shows that the petitioner
> would in all likelihood have been convicted of the same, or greater, charges after a
> trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's
> conclusory allegation that, but for an alleged attorney act or omission, he would not
> have pleaded guilty is not enough to prove such a claim. Petitioner must show that
> there is a reasonable probability that the result of the proceeding would have been
> different. It is not sufficient to show that, but for counsel's alleged errors he would
> have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v.*

*Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*,

174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the

circumstances shows that the petitioner would in all likelihood have been convicted of the same, or

greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

12

Whether counsel was ineffective, thus rendering petitioner's plea invalid under the Sixth Amendment, is a question which is "doctrinally distinct" from the question whether the plea was sufficiently knowing and voluntary under the Due Process Clause. *See United States v. Wilson*, 922 F.2d 1336, 1340 (7th Cir. 1991).

      2.     *Trial Counsel*

*a.  Failure to Investigate Defense*

Petitioner first contends that his trial counsel was ineffective for failing to investigate a claim of right defense to the charges against him. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

The factual basis for petitioner's plea was based on the preliminary examination testimony of one of the victims, Latina Marie Warren. Petitioner's brief accurately summarizes Warren's testimony at the preliminary examination:

> Ms. Warren told the court that she was home with her boyfriend, Mr. Carlton, and her two children, when her door got kicked opened [sic]. She was awaken[ed] to the sound of someone saying: "this is a jack, move bitch." (P.E. Tr p 6). She said that two people came into her home, one being a black male, the other beings white male, (P.E. Tr p 7). She identified Sisler as being the white male who entered here home, (P.E. Tr p 8). Thereafter she said:
>> "Yes, he, ah, approached my boyfriend, kind of roughed him up against the wall and demanded money. . . . I mean, he kind of like, you know, pushed him up against the wall and was demanding money. . . . He said, give my your money. Give me your money." (P.E. Tr p 9).
>
> Ms. Warren said that Sisler walked to the bed where she was sitting and she reached for her purse on the floor and Petitioner screamed to the gentleman, "the money's in here." She attempted to get up and she was struck on the side of the head with a beer bottle from her speaker. (P.E. Tr p 10). She indicated that while struggling with Petitioner, Mr. Brewer struck her on the head with the gun, (P.E. Tr p 11). She indicated that Petitioner kept yelling to the black person, "the money's in here. The purse is in here." (Tr p 13).

Pet., at 9-10. Petitioner contends that counsel was ineffective for failing to pursue a claim of right

13

defense because he told counsel "that he had purchased 'marijuana' from the victim, Mr. Carlton and his girlfriend, Ms. Warren. That he paid the people $300.00 for a 'quarter pound' of marijuana. However, when he got to his place to divide the marijuana with his codefendant, Dameon Brewer, he discovered the amount was not what he had paid for and he wanted his money back, or the rest of the product." Pet., at 13. The Court should conclude that this claim is without merit.

Petitioner had no valid claim of right defense even assuming the truth of his version of events, and thus he was not prejudiced by counsel's failure to investigate and pursue a claim of right defense. Under Michigan law, "a claim of right defense arises when there is a dispute regarding the defendant's felonious intent at the time of the taking." *People v. Cain*, 238 Mich. App. 95, 118-19, 605 N.W.2d 28, 42 (1999). Pursuant to the defense as applied to larceny-type offenses, "if a defendant had a good-faith belief that the defendant had a legal right to take the property at issue, then the defendant cannot be convicted because the defendant did not intend to deprive another person of property." *Id*. at 119, 605 N.W.2d at 42. However, because a defendant's belief must be in good faith, and because a defendant must have a *legal right* to the property, a claim of right defense is not available where "the alleged debt in question is the product of illegal activities." *People v. Karasek*, 63 Mich. App. 706, 713, 234 N.W.2d 761, 765 (1975). In particular, in cases involving an asserted claim of right defense based on a defendant's having been "shorted" drugs in a drug transaction, the Michigan Court of Appeals has concluded that the defense is not available:

> The defendant's claim of right must be legally recognizable and made in good faith. In the instant case, the defendant's claim was neither legally tenable nor bona fide. Purchase of a controlled substance like cocaine does not create the usual contract rights that normally arise out of a sales transaction. The law will not recognize the attempt to enforce those rights.

*People v. Hobbs*, 68 Mich. App. 239, 241, 242 N.W.2d 535, 536 (1976). The court has repeatedly

14

applied this rule in cases involving facts the same as those alleged by petitioner. *See, e.g., People v. Randall*, No. 267689, 2007 WL 624641, at *2 (Mich. Ct. App. Mar. 1, 2007); *People v. Thomlison*, No. 223288, 2001 WL 1231842, at *1 (Mich. Ct. App. Oct. 16, 2001); *People v. Hubble*, No. 181046, 1997 WL 33350553, at *1-*2 (Mich. Ct. App. Apr. 15, 1997); *Hobbs*, 68 Mich. App. at 241, 242 N.W.2d at 536.

Because petitioner did not have a valid claim of right defense under state law, petitioner cannot show that he was prejudiced by counsel's failure to investigate the defense. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Misadvice Regarding Sentence

Petitioner next contends that counsel was ineffective for advising him that his likely guideline score, in conjunction with the trial court's *Cobbs* agreement to sentence him to no more than the midpoint of the guideline range, would result in no more than 17 years' imprisonment. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

As the Supreme Court has explained:

> Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
> That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 770 (1970). Thus, counsel's allegedly erroneous advice regarding petitioner's likely sentence does not provide a basis for habeas relief. *See Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993). Importantly, the trial judge informed petitioner that no specific sentence was contemplated by the agreement, and that the guidelines had yet to be

15

scored, and petitioner indicated that he understood these facts.  Petitioner also denied that he had

been promised any particular sentence.  Thus, any prejudicial effect of trial counsel's erroneous

advice was cured by the trial court's statements to petitioner, and petitioner's plea was not

involuntary because of counsel's erroneous advice.  *See Christy v. Lafler*, No. 05-CV-74390-DT,

2007 WL 1648921, at *5 (E.D. Mich. June 6, 2007) (Cleland, J.); *Owczarczak v. Bock*, No. 01-

10031-BC, 2004 WL 192414, at *5 (E.D. Mich. Sept. 26, 2004) (Lawson, J.); *cf. Ventura v.

Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (internal quotation omitted) (plea not rendered

involuntary by counsel's erroneous advice regarding sentencing where trial court's plea colloquy

"apprised [the petitioner] of the actual sentencing possibilities.").  Accordingly, the Court should

conclude that petitioner is not entitled to habeas relief on this claim.

### c. Allowing Petitioner to Plead Pursuant to an Illusory Bargain

Petitioner also contends that counsel was ineffective for allowing him to plead *nolo

contendere* pursuant to an illusory plea bargain.  However, petitioner cannot show that his plea

bargain was illusory.  Much of petitioner's claim is premised on his belief that he had a valid claim

of right defense but, as explained above, he had no such defense available to him.  Further, petitioner

contends that the plea bargain was illusory because it was premised on him being sentenced within

the sentencing guidelines, but the sentencing guidelines do not apply to habitual offenders.  This

claim is without merit.

Under the judicially-created sentencing guidelines, the Michigan courts had held that the

guidelines were not binding in habitual offender cases.  In such cases, the court was still required

to complete a Sentencing Information Report (SIR), which included a guideline calculation, but was

not required to sentence within the guideline range or provide a reason for departing upward from

16

that range.  *See People v. Edgett*, 220 Mich. App. 686, 691, 560 N.W.2d 360, 362 (1996).  Even

were this still the law, petitioner would not be entitled to relief because the fact is that the trial court

did sentence petitioner within the guidelines pursuant to the plea agreement.  If any thing, the fact

that the trial court could have, under petitioner's view of the law, sentenced petitioner well beyond

the guidelines without providing a compelling reason for doing so renders the benefit of his

bargain–a sentencing within the guidelines–even greater.  In any event, for offenses such as

petitioner's committed after January 1, 1999, sentencing is controlled not by the judicial guidelines,

but by the statutory guidelines enacted by the Michigan legislature.  *See* MICH. COMP. LAWS §

769.34.  And unlike the judicial guidelines, "the legislative guidelines clearly indicate that

defendant's status as a habitual offender increases the upper limit of the minimum range under the

statutory guidelines by a specified percentage."  *People v. Disney*, No. 273367, 2008 WL 162000,

at *1 (Mich. Ct. App. Jan. 17, 2008); *see* MICH. COMP. LAWS § 777.21(3).

Regardless of whether or not the trial court was bound by the sentencing guidelines,

petitioner received a substantial benefit by pleading *nolo contendere*.  If the judge was bound by the

guidelines, petitioner received a benefit by the trial court's agreement to sentence to no more than

the midpoint of the guideline range on the minimum sentence.  In this case, petitioner's guidelines

for the minimum sentence was 225-468 months' imprisonment.[4]  This mid-point of this range was

346.5 months' imprisonment, 125.5 months (or nearly 10½ years) lower than the maximum potential

sentence he faced on the minimum.  There is no doubt that this provided a substantial benefit to

petitioner.  And, indeed, petitioner was sentenced to an even lesser term of 300 months'

---

[4]Although the SIR prepared in petitioner's case is not a part of the record before this Court, this is the range discussed in petitioner's state court briefs.  *See* Def.-Appellant's Br. in Supp. of Delayed App. for Leave to App., in *People v. Sisler*, No. 245630 (Mich. Ct. App.), at 5.

imprisonment, shaving an additional three years off of his potential maximum-minimum term. Thus, the plea agreement provided petitioner with a substantial benefit. If, as petitioner contends, the trial court was not bound by the sentencing guidelines, the benefit was even greater, because the trial court could then have sentenced petitioner to any term of years or life imprisonment. Thus, petitioner cannot show that his plea was illusory, and he therefore cannot establish that counsel was ineffective for allowing him to plead guilty pursuant to an illusory plea bargain. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3. *Appellate Counsel*

Petitioner contends that appellate counsel was ineffective for failing to raise his habeas issues on appeal. With respect to appellate counsel, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Here, as explained in this Report, all of petitioner's ineffective assistance of trial counsel, plea validity, and sentencing claims are without merit. Thus, petitioner cannot show that appellate counsel was ineffective for failing to raise the claims on direct appeal.

Petitioner also contends that appellate counsel was ineffective for failing to recognize that his right to an appeal as of right could not be waived as part of the plea agreement. Petitioner is not entitled to habeas relief on this claim, because he cannot show that the implicit waiver of his right to appeal other than by application for leave was invalid. The Michigan Constitution was amended in 1994 by the adoption of Proposal B to provide, in relevant part, that "except as provided by law an appeal by an accused who pleads guilty or nolo contendere shall be by leave of court." MICH. CONST. art. I, § 20. Pursuant to this provision, Michigan courts, in most cases, began to deny

18

indigent defendants appointed counsel to pursue applications for leave to appeal from plea-based convictions, a practice subsequently codified by the Michigan legislature. *See Kowalski v. Tesmer*, 543 U.S. 125, 127 (2004); MICH. COMP. LAWS § 770.3a. In *Halbert v. Michigan*, 545 U.S. 605 (2005), the Court held that this practice of denying counsel for the preparation of an application for "first-tier" appellate review was unconstitutional. Petitioner reads *Halbert* as standing for the proposition that an appeal by right cannot be waived by or denied to a defendant who pleads guilty. *Halbert*, however, establishes no such principle.

It is well-established that the constitution does not require a state to provide for an appeal from a criminal conviction. *See Ross v. Moffitt*, 417 U.S. 600, 606 (1974); *McKane v. Durston*, 153 U.S. 684, 687 (1894). It is equally well established, however, that where a state does provide a system of appellate review, it must comply with the requirements of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Thus, the Supreme Court has held that a state may not deny counsel to an indigent defendant pursuing an appeal of right. *See Douglas v. California*, 372 U.S. 353, 356-57 (1963). The Supreme Court subsequently held, however, that a state need not appoint counsel to an indigent defendant pursuing a discretionary appeal. *See Ross*, 417 U.S. at 609. In *Halbert*, the Court held that the state's practice of denying indigent defendants appointed counsel to pursue a first-tier application for leave to appeal came within the *Douglas* line of cases, and thus that the denial of appointed counsel violated indigent defendants' rights to due process and equal protection. Nothing in *Halbert*, however, detracts from a state's ability to provide for appeal, nor precludes a state from limiting appeals from plea-based convictions, so long as it does not unequally burden the rights of indigent defendants. On the contrary, the *Halbert* Court reiterated the general rule that "[t]he Federal Constitution imposes on the States no obligation to

19

provide appellate review of criminal convictions," *Halbert*, 545 U.S. at 610 (citing *McKane*, 153

U.S. at 687), and responding to an argument by the dissent suggested that there would be no

constitutional problem with a rule which denied all appellate review of plea-based convictions. *Id.*

at 624 n.8 ("[I]f Michigan were to require defendants to waive all forms of appeal as a condition of

entering a plea, that condition would operate against moneyed and impoverished defendants alike.").

Thus, nothing in *Halbert* requires Michigan to provide a direct appeal as of right from a plea-

based conviction, and thus any argument by appellate counsel that petitioner had such a right would

have been futile. Petitioner did, in fact, have counsel to prepare his application for leave to appeal,

and thus he was provided with all that he was entitled to under *Halbert*. Further, even if *Halbert*

establishes the proposition that petitioner could not be deprived of an appeal of right, counsel cannot

be deemed ineffective for failing to raise this argument. Petitioner's appeals were concluded well

before the Supreme Court's decision in *Halbert*, and as the Sixth Circuit has explained the *Halbert*

rule is a "new rule" not dictated by the Supreme Court's then-existing precedent. *See Simmons v.*

*Kapture*, 516 F.3d 450, 451 (6th Cir. 2008) (en banc). "Counsel's failure to raise issues on appeal

that only later gain 'judicial recognition' does not constitute ineffectiveness." *Francois v.*

*Wainwright*, 741 F.2d 1275, 1285 (11th Cir. 1984); *see also, Alcorn v. Smith*, 781 F.2d 58, 62 (6th

Cir. 1986) (noting that "nonegregious errors such as failure to perceive or anticipate a change in the

law . . . generally cannot be considered ineffective assistance of counsel."). Accordingly, the Court

should conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Plea and Sentencing Claims*

Petitioner next raises several challenges to the validity of the plea and to his sentence. The

Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Breach of Plea Agreement*

Petitioner first contends that his sentence, which greatly exceeded both what his counsel and the prosecutor predicted his sentence would be, constituted a breach of the plea agreement. This claim is without merit.

In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262. The Court has subsequently clarified this language, holding that *Santobello* does not apply to every rescinded government promise. Rather, it applies only to those promises that induce a defendant to plead guilty. *See Mabry v. Johnson*, 467 U.S. 504, 507-08, 510 (1984). Under *Santobello*, the appropriate remedy for the government's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea. *See Santobello*, 404 U.S. at 263. The appropriate remedy is within the trial court's discretion, *see Santobello*, 404 U.S. at 263; *United States v. Bradstreet*, 207 F.3d 76, 80 (1st Cir. 2000); *Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir. 1994), and the Constitution does not require specific performance, *see Mabry*, 467 U.S. at 510 n.11; *Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1300 (4th Cir. 1992).

Here, there is no indication that the prosecution or the court misrepresented the terms of the plea agreement. On the contrary, it was clear to the court, the prosecutor, defense counsel, and petitioner that the parties were not agreeing that any particular sentencing range applied. Rather, the parties only agreed that, whatever the applicable range for the minimum sentence, the court would not impose a sentence greater than the mid-point of the range. *See* Video Plea Tr., at 3-4. The trial court also explained to petitioner the maximum sentences he was facing, and petitioner

21

indicated that no other promises beyond the *Cobbs* agreement had been made to induce his plea. *See id*. at 4-9.

"[A] federal court sitting in habeas review should not 'lightly find misrepresentation in a plea agreement.'" *Myers v. Straub*, 159 F. Supp. 2d 621, 627 (E.D. Mich. 2001) (Steeh, J.) (quoting *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000)). Further, the prosecution is held only to the literal terms of the plea agreement. *See United States v. Packwood*, 848 F.2d 1009, 1012 (9th Cir. 1988). In determining the scope of a plea agreement, the content of the promises made is a question of fact. *See United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002); *United States v. Doe*, 940 F.2d 199, 202 (7th Cir. 1991). As to the facts, all involved were in agreement that the plea deal did not include an agreement on the applicable sentence range or on the actual sentence that the trial court would impose. The estimate as to the sentence was not a term of the agreement to which the prosecutor could be held. *See United States v. Oyegbola*, 961 F.2d 11, 14-15 (1st Cir. 1992); *United States v. Fortney*, 957 F.2d 629, 631 (8th Cir. 1992) (per curiam); *cf. United States v. Cavender*, 228 F.3d 797, 803 (7th Cir. 2000) ("Usually, where the sentencing calculations in a plea agreement are described as 'preliminary,' the later imposition of a higher sentence does not violate the plea agreement."). Thus, there is no *Santobello* violation. *See United States v. Ray*, 54 Fed. Appx. 621, 622 (6th Cir. 2002). Indeed, the courts have rejected claims nearly identical to those made by petitioner here. *See Wright v. Lafler*, 247 Fed. Appx. 701, 706-07 & n.5 (6th Cir. 2007) (even though counsel made preliminary calculation of 19-38 month guideline range and prosecutor made preliminary calculation of 29-57 month guideline range, sentence of 7-15 years' imprisonment did not violate *Santobello* or render plea involuntary where the trial court at the plea hearing explained the maximum sentence, indicated that he did not know what the guidelines would be, and

confirmed with petitioner that "pursuant to *People v. Cobbs* the only thing that I have agreed about

your sentence is it will be within the sentencing guidelines."); *Crable v. Sherry*, No. 2:06-CV-14861,

2007 WL 2983636, at *3 (E.D. Mich. Oct. 11, 2007) (Edmunds, J.) (same conclusion under similar

facts). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this

claim.

2. *Involuntary Plea*

Petitioner also contends that his plea was involuntary and unknowing because he was not

advised that the sentencing guidelines did not apply to habitual offenders. The Court should

conclude that this claim is without merit.

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the

totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v.

Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the

defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17

F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness.

*See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).

"The subsequent presentation of conclusory allegations unsupported by specifics is subject to

summary dismissal, as are contentions that in the face of the record are wholly incredible."

*Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when

he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v.

Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused
> person, who has been advised by competent counsel, may not be collaterally
> attacked. It is also well settled that plea agreements are consistent with the
> requirements of voluntariness and intelligence--because each side may obtain

23

advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id.* at 508 (footnotes omitted).

With respect to the voluntariness issue, petitioner does not contend that he was coerced into pleading guilty or that the decision was not his own, nor could he given that he stated at the plea hearing that he had not been threatened or coerced into pleading guilty. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Likewise, petitioner does not contend, nor could he, that he did not receive sufficient explanation of various things required to make his voluntary. The Supreme Court cases discussing the validity of guilty pleas under the Due Process Clause establish three things of which a defendant must be informed before a guilty plea is knowing and voluntary: (1) the actual charge against the defendant, *see Bousley v. United States*, 523 U.S. 614, 618 (1998); (2) the direct consequences of the plea, *see Mabry*, 467 U.S. at 509; and (3) the rights that the defendant is waiving by pleading guilty, *see Henderson*, 426 U.S. at 645 n.13. As discussed in part B of this Report, *supra*, the plea hearing transcript establishes that petitioner was informed of each of these things.

Rather, petitioner contends that his plea was involuntary because he did not understand that the sentencing guidelines do not apply to habitual offenders. However, as discussed in connection with petitioner's ineffective assistance claim, by the time of petitioner's conviction and sentence the guidelines were applicable to habitual offenders. And, in any event, regardless of whether the trial court was bound to follow the guidelines, in petitioner's case the court did so pursuant to the terms of the *Cobbs* agreement. Nor can petitioner show that his plea was involuntary and unknowing

24

because he subjectively believed under the *Cobbs* agreement his sentence would be less, for the same reason he cannot show a breach of the plea agreement. *See Wright*, 247 Fed. Appx. at 706-07; *Crabble*, 2007 WL 2983636, at *3. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.      *Misscoring of Sentencing Variables*

Finally, petitioner contends that the trial court miscalculated. Petitioner does not identify which particular sentencing variables were misscored, but in any event the claim is not cognizable on habeas review. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: July 6, 2009

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and Robert Sisler by electronic means or U.S. Mail on July 6, 2009.

s/Eddrey Butts
Case Manager